IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CHAD PEHRSON, as Receiver,<br><br>Plaintiff,<br><br>v.<br><br>BANK OF UTAH, a Utah corporation,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:25-cv-00462-RJS-DBP<br><br>District Judge Robert J. Shelby<br><br>Magistrate Judge Dustin B. Pead |

Before the court is Defendant Bank of Utah's Motion to Dismiss.[1] For the reasons discussed below, the court DENIES the Motion.

## BACKGROUND and PROCEDURAL HISTORY[2]

Plaintiff Chad Pehrson brings this action in his capacity as the court-appointed receiver over the assets of the Estate of Stephen Romney Swensen.[3] The court appointed Pehrson as receiver as part of a Securities and Exchange Commission action against Swensen for an alleged Ponzi scheme involving the misappropriation of investment funds.[4] The receivership covers the assets of Swensen's estate, including the assets of WS Family, IP, LLC; Crew Capital Group, LLC, and Swensen Capital, LLC (collectively, the Receivership Defendants).[5]

[1] Dkt. 22, *Defendant's 12(B)(6) Motion to Dismiss for Lack of Standing* (*Motion*).

[2] The following facts are drawn from the operative complaint. Dkt. 14, *First Amended Complaint* (*Amended Complaint*). In reviewing the Motion, the court "accept[s] as true all well-pleaded facts" and "view[s] those facts in the light most favorable to the nonmoving party." *Beedle v. Wilson*, 422 F.3d 1059, 1063 (10th Cir. 2005) (quoting *Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1304 (10th Cir. 1998)).

[3] *Amended Complaint* ¶ 1; *see also* Dkt. 14-2, *Exhibit B* (*SEC v. Swensen*, No. 1:22-cv-00135-RJS-DBP, Dkt. 38, *Order Appointing Receiver* (D. Utah Aug. 8, 2023) (*Order Appointing Receiver*)).

[4] *Amended Complaint* ¶¶ 13–20.

[5] *Id.* ¶ 1.

As part of the alleged Ponzi scheme, Swensen offered and sold investments in Crew Capital to various customers and clients, marketing them as a safe retirement investment with guaranteed minimum annual returns.[6] Swensen informed some investors that the investments would be placed in a fund at the Bank of Utah.[7] But no such fund existed.[8] After investors deposited their funds with the Bank of Utah, Swensen promptly transferred these funds to a Crew Capital account at Wells Fargo Bank.[9] Instead of investing the funds in a safe, legitimate, and actively managed portfolio as advertised,[10] Swensen misappropriated the funds to make Ponzi payments to other investors and to pay for Swensen's personal expenses, including real estate, vehicles, private aircraft, and various other living expenses for him and his family.[11]

Pehrson alleges Bank of Utah was a part of Swensen's operation. Between 2010 and 2022, Bank of Utah opened approximately thirty-five self-directed IRA accounts with more than $15 million of qualified retirement assets invested in Crew Capital.[12] During that period, Bank officers provided Swensen with packets of official forms and promotional materials which he used to solicit new clients and open IRA accounts at the Bank on their behalf.[13] Each new IRA account holder entered a custodial agreement with the Bank for the Bank to act as a "custodian"

[6] *Id.* ¶¶ 23–24.

[7] *Id.* ¶ 25.

[8] *Id.*

[9] *Id.*

[10] *Id.* ¶¶ 24–28.

[11] *Id.* ¶ 15.

[12] *Id.* ¶ 35.

[13] *Id.* ¶¶ 38–44.

for the self-directed IRAs.[14] The Bank did not directly meet with these new clients but interacted with them through Swensen.[15]

To pay the fees on the IRA accounts, the Bank and Swensen developed an arrangement where Swensen would transfer funds from the Crew Capital Wells Fargo account to cover the individual account fees.[16] Instead of charging each individual account holder directly, which is typical with IRA accounts, the Bank issued quarterly statements to Swensen identifying each Crew Capital customer's custodial account fees.[17] Swensen would then transfer a single lump sum payment to the Bank to pay the fees for all of the custodial accounts.[18] The Bank was aware that the fee payments came from the same Crew Capital account to which it transferred the investor funds.[19] The Bank received at least $811,806.37 in payments from the Crew Capital account.[20] During this period, Bank of Utah Vice President and Senior Trust Officer Jodie Buckner questioned the legitimacy of Crew Capital, concluding Swensen was in fact operating a Ponzi scheme.[21] Despite her concerns, the officer continued opening new IRA accounts with Swensen and never contacted state or federal regulators.[22]

After the Ponzi scheme collapsed and the court appointed Pehrson as Receiver, the court authorized him to take immediate possession of all property of the Receivership Defendants,

---

[14] *Id.* ¶ 66.

[15] *Id.* ¶¶ 42, 44.

[16] *Id.* ¶¶ 57–65.

[17] *Id.* ¶ 60.

[18] *Id.* ¶ 62.

[19] *Id.* ¶ 61.

[20] *Id.* ¶¶ 62–65.

[21] *Id.* ¶¶ 45–56.

[22] *Id.* ¶¶ 51, 52–56.

wherever located.[23] The court further "authorized, empowered and directed [the Receiver] to investigate, prosecute, defend, intervene in or otherwise participate in . . . any . . . court or proceeding of any kind as may in his discretion . . . be advisable or proper to recover and/or conserve Receivership Property."[24] The Receiver was also authorized "to institute such actions and legal proceedings, for the benefit and on behalf of the Receivership Estate, as the Receiver deems necessary and appropriate."[25]

On June 11, 2025, Pehrson in his capacity as receiver filed a Complaint against Bank of Utah bringing two claims for (1) avoidance of fraudulent transfer under the Utah Uniform Voidable Transactions Act (UFTA) and (2) unjust enrichment.[26] Pehrson seeks to recover the $811,806.37 transferred from Crew Capital to Bank of Utah.[27] On November 18, 2025, Pehrson filed an Amended Complaint.[28] On January 15, 2026, Bank of Utah filed the instant Motion seeking dismissal for lack of prudential standing.[29] The Motion is fully briefed and is ripe for review.[30]

**LEGAL STANDARD**

A motion to dismiss for lack of prudential standing is governed by Federal Rule of Civil Procedure 12(b)(6), rather than Rule 12(b)(1) for lack of subject-matter jurisdiction.[31] Under

---

[23] *Id.* ¶¶ 17–18; *Order Appointing Receiver* ¶¶ 14–18.

[24] *Order Appointing Receiver* ¶ 38.

[25] *Id.* ¶ 39.

[26] Dkt. 2, *Complaint* ¶¶ 46–61.

[27] *Id.* at 11. Pehrson also seeks prejudgment interest, costs, and reasonable attorney's fees. *Id.*

[28] *Amended Complaint*.

[29] *Motion*.

[30] *See id.*; Dkt. 26, *Receiver's Opposition to Defendant's Motion to Dismiss for Lack of Standing* (*Opposition*); Dkt. 29, *Defendant's Reply in Support of 12(B)(6) Motion to Dismiss for Lack of Standing* (*Reply*).

[31] *VR Acquisitions, LLC v. Wasatch County*, 853 F.3d 1142, 1146 & n.4 (10th Cir. 2017) (stating prudential standing "is clearly rooted in principles of prudential, rather than Article III standing," which is jurisdictional); *see also Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795 n.2 (5th Cir. 2011) ("Unlike a dismissal for lack of

Rule 12(b)(6), a court must dismiss an action if the plaintiff "fail[s] to state a claim upon which relief can be granted."[32] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[33] A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[34] When determining whether a complaint adequately states a claim, the court "assume[s] the factual allegations are true and ask[s] whether it is plausible that the plaintiff is entitled to relief."[35] "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[36]

**ANALYSIS**

The Motion argues this case should be dismissed because Pehrson lacks prudential standing to pursue its claims against Bank of Utah.[37] The court disagrees.

Unlike Article III standing, prudential standing is not a function of the Constitution's case-or-controversy requirement but rather a "judicially self-imposed limit[] on the exercise of federal jurisdiction."[38] "The prudential standing doctrine encompasses various limitations, including 'the general prohibition on a litigant's raising another person's legal rights.' 'The

---

constitutional standing, which should be granted under Rule 12(b)(1), a dismissal for lack of prudential or statutory standing is properly granted under Rule 12(b)(6).").

[32] Fed. R. Civ. P. 12(b)(6).

[33] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[34] *Id.* (citing *Twombly*, 550 U.S. at 556).

[35] *Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009).

[36] *Strauss v. Angie's List, Inc.*, 951 F.3d 1263, 1267 (10th Cir. 2020) (citation modified).

[37] *Motion.*

[38] *Wilderness Soc. v. Kane County*, 632 F.3d 1162, 1168 (10th Cir. 2011) (quoting *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004)).

plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'"[39] Accordingly, "[a] party may suffer a cognizable injury but still not possess a right to relief"[40] when that injury arises from a violation of a right held by another person and not of a right held by the injured party.[41]

A receiver has standing to pursue recovery of fraudulent transfers made by the receivership entities to third parties.[42] In the seminal case on the issue *Scholes v. Lehmann*,[43] the Seventh Circuit held that a receiver for a corporation which was operated as a Ponzi scheme has prudential standing to assert fraudulent conveyance claims for transfers to third parties because the receivership corporation was "[f]reed from [the] spell" of the schemer and was subsequently operated by the receiver on behalf of its innocent investors and creditors.[44] Accordingly, the control person perpetuating the Ponzi scheme and the controlled-corporation "were nevertheless in the eyes of the law separate legal entities with rights and duties[,]" and the receiver therefore had standing to pursue claims for violations of the corporation's rights, including for fraudulent transfer.[45] Other circuits have adopted this approach.[46] The Tenth Circuit in *Wing v.*

---

[39] *Id.* (citation modified) (first quoting *Allen v. Wright*, 468 U.S. 767, 751 (1984); then quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)).

[40] *Id.* at 1171.

[41] *See RMA Ventures Cal. v. SunAmerica Life Ins. Co.*, 576 F.3d 1070, 1073 (10th Cir. 2009) (explaining "[a] well-founded prudential-standing limitation is that litigants cannot sue in federal court to enforce the rights of others").

[42] *See Scholes v. Lehmann*, 56 F.3d 750, 753–55 (7th Cir. 1995).

[43] 56 F.3d 750 (7th Cir. 1995); *see also Wing v. Hammons*, No. 2:08-CV-00620, 2009 WL 1362389, *2 (D. Utah May 14, 2009).

[44] *Id.* at 753–55.

[45] *Id.*

[46] *See Donell v. Kowell*, 533 F.3d 762, 776–77 (9th Cir. 2008) (applying *Scholes*); *Eberhard v. Marcu*, 530 F.3d 122, 132–33 (2d Cir. 2008) (same); *Janvey v. Democratic Senatorial Campaign Comm., Inc.*, 712 F.3d 185, 189–92) (same).

*Dockstader*[47] found "the reasoning in [*Scholes*] persuasive, and therefore reject[ed] the argument that [a] Receiver lacks standing" to recover funds fraudulently transferred to third parties.[48]

Bank of Utah argues Pehrson, as the receiver for Crew Capital, lacks prudential standing to void the Custodial Agreements because the Agreements are contracts between the Bank and the individual investors, and the Receivership Defendants were not parties or third-party beneficiaries of the Agreements.[49] Bank of Utah contends that the "[c]laims about the validity and enforceability of the Custodial Agreement belong to the parties entered into that agreement (Bank of Utah and the individual investors) and not to the Receiver or any receivership entity," and that "the Receiver seeks relief outside of the scope of his authority" in pursuing the claims.[50]

Pehrson counters he does have prudential standing to pursue the action because he is not bringing contract invalidation claims but rather claims for fraudulent transfer and unjust enrichment, and the funds were transferred from the same Crew Capital Wells Fargo account in which Swensen pooled the defrauded investors' funds.[51] Pehrson further asserts that he "is not asking this Court to enforce, void, or award relief under any custodial agreement" nor "seek a declaration concerning the validity or enforceability of those agreements[,]" but rather he invokes the custodial agreements "to establish the factual underpinnings of the Receiver's

[47] 482 Fed. App'x. 361, 363 (10th Cir. 2012) (unpublished).

[48] *Id.* at 363; *see also Wing v. Layton*, 957 F. Supp. 2d 1307, 1313–14 (D. Utah 2013) (citing *Scholes* for the proposition a "receiver for corporations that were operated by a Ponzi scheme principal has standing to assert fraudulent conveyance claims to recover amounts transferred by the corporations during the course of the Ponzi scheme."); *Wing v. Hammons*, 2009 WL 1362389 at *2 (applying *Scholes* to fraudulent transfer and unjust enrichment claims).

[49] *Motion* at 3–7.

[50] *Id.* at 7.

[51] *Opposition* at 6–10.

claims, including the nature of Bank of Utah's conduct, its knowledge and state of mind, and the absence of value conferred by the Bank."[52]

Considering the nature of the claims asserted, the court agrees with Pehrson and concludes the Amended Complaint adequately states a claim upon which relief can be granted. Here, the claim for voidance of fraudulent transfer is the same type of claim considered in *Scholes* and the other cases relying upon it.[53] The Amended Complaint alleges that Swenson fraudulently transferred funds from the Crew Capital account to the Bank in operation of a Ponzi scheme.[54] Crew Capital is no longer under Swensen's control, and it is now being operated by Pehrson on behalf of its innocent investors. Crew Capital was allegedly injured when its funds were transferred to the Bank in perpetration of the Ponzi scheme, and Pehrson—as the receiver—has the right under UFTA to seek voidance of those transfers.[55] Accordingly, Pehrson has prudential standing to seek recovery of the funds he alleges Swensen previously fraudulently transferred to the Bank.

Bank of Utah advances two arguments to show Pehrson lacks prudential standing. The court finds both unpersuasive. First, the Bank points to specific allegations in the Amended Complaint which state the custodial agreements are "void" or "void ab initio," that there was no consideration provided by the Bank, and that "Bank of Utah received the custodial fee payments through conduct that was intentionally wrongful, reckless, or at least grossly negligent."[56] The Bank attempts to use these allegations to argue Pehrson actually seeks relief for breach of

---

[52] *Id.* at 8.

[53] *See Amended Complaint* ¶ 81–86.

[54] *Id.* ¶¶ 57–65.

[55] *See* Utah Code § 25-6-202 (allowing for a creditor to void a transfer if made "with actual intent to . . . defraud any creditor of the debtor").

[56] *Reply* at 3–4 (citing *Amended Complaint* ¶¶ 76, 78–80).

contract, which he lacks standing to bring.[57] However, the Amended Complaint pleads only fraudulent transfer and unjust enrichment claims and not one for breach of contract.[58] UFTA requires Pehrson show the Bank possessed "actual intent" to effect a fraudulent transfer.[59] Allegations that the custodial agreements were void, the Bank did not provide actual consideration, and that it received the payments through wrongful or reckless conduct are relevant to determining whether the Bank possessed actual intent to defraud. Therefore, the fact the Amended Complaint alleges the Custodial Agreements were void does not eliminate Pehrson's standing.

Second, the Bank argues that although the fees were paid via fund transfers from Crew Capital, the transfers were on behalf of the account holders, and Pehrson therefore does not have standing because Crew Capital was not a party to the Custodial Agreements.[60] The court disagrees. While the transfers were made to nominally cover the quarterly account fees of the investors' individual IRA accounts, those fees were paid with funds from the single Crew Capital Wells Fargo account.[61] Swenson used the funds in this same insolvent Wells Fargo account to operate the Ponzi scheme and use for his personal expenses.[62] And the transfer of the Crew Capital funds to pay the IRA account fees was allegedly used to perpetrate this fraudulent scheme.[63] Accordingly, because Crew Capital—and not the investors themselves—paid the

---

[57] *Id.*

[58] *See Amended Complaint.*

[59] Utah Code § 25-6-202(1)(A).

[60] *Motion* at 5.

[61] *Amended Complaint* ¶ 60.

[62] *Id.* ¶ 15.

[63] *Id.* ¶ 64.

account fees, Pehrson has standing to seek recovery of the fraudulent payments from Crew Capital pursuant his theories of fraudulent transfer and unjust enrichment.

**CONCLUSION**

For the reasons discussed above, the Motion to Dismiss is DENIED.[64]

SO ORDERED this 17th day of August, 2026.

BY THE COURT:

ROBERT J. SHELBY
United States District Judge

[64] Dkt. 22.